UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Lindley Murphy,

     Plaintiff,

     v.                                       Civil Action No. 2:14-cv-126

State of Vermont Department
of Corrections, Greg Hale, Northwest
State Correctional Facility, John Doe,
and Jane Doe,

     Defendants.

## <u>REPORT AND RECOMMENDATION</u>
(Doc. 22)

Plaintiff Lindley Murphy, an inmate proceeding *pro se*, brings this action under 42

U.S.C. § 1983, alleging that Defendants denied him a "proper diet" and "proper medical

care" in violation of his rights under the Eighth and Fourteenth Amendments.  (Doc. 5

at 2–3, 6.)  For relief, Murphy seeks: (1) an order that the Vermont Department of

Corrections provide him with "proper medical care," and (2) damages in the amount of

$5,000,000.  (*Id.* at 3.)

Murphy filed his Complaint on June 26, 2014, and alleges the following facts

therein.  (Doc. 5.)  For three years, Murphy has been a pretrial detainee incarcerated at

the Northwest State Correctional Facility (NWSCF) in Swanton, Vermont.  (*Id.* at 5.)

While incarcerated, he developed "a severe rash on [his] feet," which progressively worsened.  (*Id.*)  The medical staff did nothing to care for his condition and refused to let him see "a medical professional or dermatologist."  (*Id.*)  Murphy has also long suffered from "an imbalance of acid[]ity" in his stomach.  (*Id.*)  He received no help at NWSCF for this condition and was unable to obtain his desired medication.  (*Id.* at 5, 6.)  Murphy asserts that, "[d]ue to [Defendants'] neglect[,] [he is] spiraling down into mental anguish" (*id.* at 5), is suffering from "post[]traumatic stress" and "severe und[ue] emotional distress" (*id.*at 6), and is "feeling suicid[]al" (*id.*).  Murphy further asserts that he "cannot eat half the food they say medical prescribes" (*id.*); he is having difficulty walking and sleeping (*id.* at 7); and his vomiting results in an inability to swallow (*id.*).  NWSCF "has done nothing to fix the[se] issues" (*id.* at 3), despite Murphy's claim that he has "filed multiple grievances" (*id.* at 2).

On June 15, 2015, Defendants State of Vermont Department of Corrections (DOC), Greg Hale, and NWSCF filed a Motion for Summary Judgment (Doc. 15), arguing that Murphy could not satisfy his burden of showing Defendants' negligence or deliberate indifference to his claimed medical needs, given his failure to provide an expert opinion in support of his claims.  (*Id.* at 3.)  The Court denied Defendants' Motion, concluding that the lack of an expert was not fatal to Murphy's claims.  (Doc. 16 at 5–6; *see also* Doc. 18 (adopting Report and Recommendation).)  The Court also denied Defendants' Motion on the grounds that it was "inadequately briefed" (*id.* at 6), but reserved judgment on any state law claims (*id.* at 7).

Now pending is Defendants' Renewed Motion for Summary Judgment (Doc. 22), filed on December 1, 2015.  Therein, Defendants make the following arguments: (1) sovereign immunity bars Murphy's § 1983 claims under the Eleventh Amendment to the United States Constitution (*id.* at 8, 10); (2) Murphy has failed to show Defendant Hale's personal involvement in the alleged constitutional violation (*id.* at 11–13); (3) Murphy cannot establish Defendants' "deliberate indifference to his claimed serious medical needs" (*id.* at 8–9; *see also id.* at 13–17); and (4) Murphy's potential medical negligence claim fails "because he has not disclosed an expert to offer opinions in support of that claim" (*id.* at 9; *see also id.* at 17–20).

For the reasons set forth below, I recommend that the Court GRANT Defendants' Renewed Motion for Summary Judgment and DISMISS the case.

## Discussion

## I.     Constitutional Claims

### A.     Summary Judgment—Legal Standards

Pursuant to Federal Rule of Civil Procedure 56(a), a moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When determining whether there is a genuine issue of material fact, the court is "'required to resolve all ambiguities and draw all factual inferences in favor of the' nonmovant."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir.

1999)).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Id.* (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  "To defeat summary judgment . . . non-moving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts' and they 'may not rely on conclusory allegations or unsubstantiated speculation.'"  *Bermudez v. City of New York*, 790 F.3d 368, 373–74 (2d Cir. 2015) (alteration in original) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)).

Because Murphy is proceeding *pro se*, the Court "must interpret his papers liberally 'to raise the strongest arguments that they suggest.'"  *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  "Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint."  *Saldana v. Local 32B-32J Serv. Emps. Int'l Union*, No. 03 Civ.1853 DF, 2005 WL 66895, at *2 (S.D.N.Y. Jan. 12, 2005).

### B.    Evidence

Defendants have provided an extensive record of Murphy's medical care (Docs. 22-3 to 22-96), which largely has been summarized in the affidavit of Dr. Ryan Herrington, a Vermont-licensed physician who treated Murphy during his incarceration

4

(Doc. 22-2).[1]  Also, as required by Local Rule 56(e), Defendants submitted a Statement of Undisputed Material Facts (Doc. 22-1), and notified Murphy about the consequences of failing to respond to the Motion (Doc. 22-99).  L.R. 56(e).  Although Murphy responded to the Motion with his own affidavit (Doc. 25 at 2), he did not submit a Statement of Disputed Material Facts.  L.R. 56(b).

### C.   Facts

Murphy is known among medical staff within the DOC for his "consistent use of the health service request protocol to obtain medical attention."  (Doc. 22-2 at 3, ¶ 18.)  While incarcerated, Murphy has sought medical care for various conditions, including a "foot rash" (Doc. 22-2 at 2, ¶¶ 4–5; *see, e.g.*, Doc. 22-3 at 1), and stomach acid reflux, or Gastroesophageal Reflux Disease (GERD) (Doc. 22-2 at 1, ¶ 3; 3, ¶ 13; *see, e.g.*, Docs. 22-3, 22-48).  Murphy also received mental health counseling and care during his incarceration (Doc. 22-2 at 4, ¶ 20; *see, e.g.*, Doc. 22-49 at 1), and treatment at the

---

[1]  In support of their Motion, Defendants have submitted 94 medical records relating to Murphy's foot rash, GERD, and mental health.  (Docs. 22-3 to 22-96.)  "Materials submitted in support of or in opposition to a motion for summary judgment must be admissible themselves or must contain evidence that will be presented in admissible form at trial."  *Moran v. Livingston*, 6:10–CV–6178 EAW, 2016 WL 93402, at *2 (W.D.N.Y. Jan. 7, 2016) (quoting *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169–70 (2d Cir. 2014) (per curiam)).  Although medical records like the ones at issue here are hearsay, they are admissible under the business records exception to the hearsay rule pursuant to Federal Rule of Evidence 803(6).  *Id.* at *3 (quoting *Hodges v. Keane*, 886 F. Supp. 352, 356 (S.D.N.Y. 1995)).  In order to properly admit medical records under this exception, "[f]acts supporting admissibility must be supplied 'by the testimony of the custodian or other qualified witness or by certification' that complies with Federal Rule of Evidence 902."  *Sheils v. Flynn*, No. 9:06–CV–407, 2009 WL 2868215, at *2 n.2 (N.D.N.Y. Sept. 2, 2009) (quoting Fed. R. Evid. 803(6)).

Here, Defendants have not properly authenticated all 94 medical records.  Specifically, Dr. Herrington's affidavit does not lay a proper foundation for the business records exception to the hearsay rule.  Nevertheless, I have considered the medical records, given Murphy's failure to object and Dr. Herrington's personal knowledge of Murphy's medical care.  Counsel for Defendants is cautioned "that medical records should, in the future, be properly authenticated and accompanied by an affidavit or certification that complies with Rule 803."  *Sheils*, 2009 WL 2868215, at *2 n.2; *see also Atkinson v. Fischer*, No. 9:07–cv–00368(GLS/GHL), 2009 WL 3165544, at *3 n.1 (N.D.N.Y. Sept. 25, 2009).

Vermont Psychiatric Care Hospital from January 26 to April 22, 2015 (Doc. 22-2 at 4, ¶ 19; *see, e.g.*, Docs. 22-77 to 22-79).  The facts relating to each of Murphy's conditions and subsequent treatments are presented below.

### i.   Foot Rash

While imprisoned at NWSCF, Murphy developed a foot rash that was later "diagnosed as a fungal infection," or athlete's foot.  (Doc. 22-2 at 2, ¶ 5.)  Murphy submitted many requests to receive medical attention for the foot rash (*see, e.g.*, Docs. 22-3 to 22-7), and the medical staff responded promptly to Murphy's requests (Doc. 22-2 at 2, ¶ 40), typically within one or two days (*see, e.g.*, Docs. 22-3, 22-5, 22-6, 22-7 (one day); Doc. 22-4 (two days)).  The staff also instructed Murphy "on how to care for his feet" (Doc. 22-2 at 2, ¶ 6; *see also* Doc. 22-4), and they prescribed tolnaflate 1% cream (Doc. 22-6), which along with proper foot care, is standard treatment for athlete's foot (Doc. 22-2 at 2, ¶¶ 6, 7).

On June 13, 2014,[2] Dr. Herrington examined Murphy and determined that his foot rash had been resolved.  (Doc. 22-2 at 2, ¶ 8.)  Therefore, he discontinued the tolnaflate prescription.  (*Id.*)  After the filing of this lawsuit, Dr. Herrington again examined Murphy on August 29, 2014.  (*Id.* ¶ 10.)  The doctor noted some "evidence of . . . athlete's foot," but Murphy did not indicate that the rash was bothering him.  (*Id.* ¶¶ 10, 11.)

---

[2] Defendants' Statement of Undisputed Material Facts indicates that Dr. Herrington examined Murphy on June 13, 2014, not on June 13, 2015.  (Doc. 22-1 at 4 n.1.)  I accept the mistaken date as a typographical error and recognize that, in any event, the year is inconsequential for purposes of ruling on the Motion.  (*See id.*)

In 2015, Murphy continued to request medical attention for his foot rash.  (*See, e.g.*, Docs. 22-17, 22-22, 22-23.)  Staff members again responded in a prompt manner (*see, e.g.*, Doc. 22-17 (response in one day)), instructed Murphy on proper foot care (*see, e.g.*, Doc. 22-23 ("keep clean [and] dry"); Doc. 22-24 (same)), and monitored his medication use (Doc. 22-26 ("has been using tolnaflate cream as ordered")).  On September 3, 2015, Murphy told Dr. Herrington that the foot rash was "essentially resolved," and Dr. Herrington observed that there was no "active rash."  (Doc. 22-29 at 1.)  Dr. Herrington again decided to discontinue the tolnaflate prescription.[3]  (*Id.* at 2.)

### ii.    GERD

During Murphy's incarceration, Murphy also submitted many medical requests related to GERD, or stomach acid reflux.  (Doc. 22-2 at 3, ¶ 13; *see, e.g.*, Docs. 22-31, 22-32, 22-40, 22-41, 22-42.)  Like with Murphy's foot condition, the medical staff also promptly responded to Murphy's GERD-related requests.  (*See* Doc. 22-14 (noting inmate seen same day for GERD).)  In 2013, a physician ordered a "soft diet," which continued throughout 2014.  (Doc. 22-2 at 3, ¶ 14; *see* Doc. 22-31.)  Additionally, Murphy was instructed to take medication for acid reflux (Doc. 22-32 (tums); Doc. 22-33

---

[3]    The information contained in a September 3, 2015 medical record (Doc. 22-29) parallels Dr. Herrington's statements in his affidavit concerning a medical examination that, according to Defendants, took place in June 2014, not June 2015.  *See supra* p. 6 n.2.  It is unclear whether Dr. Herrington found Murphy's foot rash to be resolved twice, first in June 2014 and then again in September 2015, or whether the doctor misstated that the September 2015 examination took place in June.  Because the doctor could have treated Murphy both in June 2014 and again in September 2015, finding the foot rash to be resolved both times, any apparent confusion is inconsequential.  Also, as noted above, even if Dr. Herrington was mistaken as to the month (and year) of the examination (and the foot rash was only "resolved" in September 2015 and not in June 2014), this error would also not alter the analysis.

(antacids)), and he was educated about "lifestyle changes he could make to prevent recurrence of reflux" (Doc. 22-2 at 3, ¶ 14; *see also* Doc. 22-31 (instructions on eating and sleeping habits); Doc. 22-32 (education about hydration)).  This medical care provided at NWSCF for Murphy's condition is considered "standard treatment for managing GERD."  (Doc. 22-2 at 3, ¶ 17.)

Regarding other digestive problems, Murphy submitted medical requests seeking attention for his repeated "vomiting" (Docs. 22-39, 22-42, 22-43) and "difficulty eating" (Doc. 22-2 at 3, ¶ 15; Doc. 22-39).  But staff members never saw Murphy vomiting (Doc. 22-2 at 3, ¶ 15), despite observing him eating "full meals without difficulty" (*id.* ¶ 16), and Dr. Herrington was "not concerned about [Murphy's] dietary intake" (*id.*).

### iii.    Mental Health

Murphy also received mental health treatment during his imprisonment at NWSCF, receiving a diagnosis of "a schizoaffective disorder" and being transferred to the Vermont Psychiatric Care Hospital for a few months in 2014.  (Doc. 22-2 at 4, ¶ 19; Doc. 22-92 (listing schizoaffective disorder); Doc. 22-77 (Vermont Psychiatric Care Hospital form).)  In addition, Murphy received "extensive mental health treatment" and mental health monitoring within the DOC.  (Doc. 22-2 at 4, ¶ 20; *see also* Doc. 22-85 ("Mental Health Treatment Plan"); Doc. 22-89 (progress notes describing mental health counseling); Doc. 22-91 ("Self Harm Watch/MH Observation Discharge Summary")).

### D.    Analysis

Murphy asserts that Defendants' failure to provide him with "legitimate health care" amounts to cruel and unusual punishment and violates his Eighth and Fourteenth

Amendment rights.  (Doc. 5 at 6.)  Defendants argue that Murphy "cannot satisfy the standard for 'deliberate indifference' and therefore his claim under § 1983 fails." (Doc. 22 at 13.)

Under 42 U.S.C. § 1983, a claimant may bring suit "against '[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . .'"  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (alterations in original) (quoting 42 U.S.C. § 1983).  "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thompson v. Pallito*, 949 F. Supp. 2d 558, 569 (D. Vt. 2013) (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).  A claim brought pursuant to § 1983 "has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges."  *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998).

Here, Murphy claims that Defendants' deliberate indifference to his medical needs resulted in an unconstitutional denial of proper medical care.  (Doc. 5 at 3; Doc. 25 at 3.) In cases like this, where a prisoner appears to be a pretrial detainee, a claim of deliberate indifference should be brought under the Fourteenth Amendment as opposed to the Eighth Amendment.  *Caiozzo v. Koreman*, 581 F.3d 63, 73 (2d. Cir. 2009).  "However, this distinction is not material because '[c]laims for deliberate indifference . . . should be analyzed under the same standard irrespective of whether they are brought under the

Eighth or Fourteenth Amendment.'" *Nielsen v. Rabin*, 746 F.3d 58, 63 n.3 (2d Cir. 2014) (alterations in original) (quoting *Caiozzo*, 581 F.3d at 72).

"To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d. Cir. 1994) (alteration in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  More specifically, "a prisoner must allege two elements, one subjective and one objective.  First, the prisoner must allege that the defendant acted with a subjectively 'sufficiently culpable state of mind.'  Second, he must allege that the conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (citation omitted) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8, 20 (1992)).

Defendants concede for purposes of their Motion that Murphy's medical needs were "sufficiently serious" under the objective prong.  (Doc. 22 at 15 n.4.)  They thus challenge only Murphy's allegations under the subjective, deliberate-indifference prong. Under that prong, "a prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  "'Deliberate indifference' describes a mental state more blameworthy than negligence; but a plaintiff is not required to show that the defendant acted for the 'very purpose of causing harm or with knowledge that harm will result.'" *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.

2003) (quoting *Farmer*, 511 U.S. at 835). "A showing of medical malpractice is

therefore insufficient to support an Eighth Amendment [or Fourteenth Amendment] claim

unless the malpractice involves culpable recklessness, i.e., an act or a failure to act by the

prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Id.*

(internal quotation marks omitted). Moreover, "[i]t is well-established that mere

disagreement over the proper treatment does not create a constitutional claim. So long as

the treatment given is adequate, the fact that a prisoner might prefer a different treatment

does not give rise to an Eighth Amendment [or Fourteenth Amendment] violation."

*Chance v. Armstrong*, 143 F.3d 698, 703 (2d. Cir. 1998).

Applying these standards, I conclude that Defendants did not violate Murphy's

constitutional rights. More specifically, I agree with Defendants' assertion that Murphy

"cannot—as a matter of law—show that Defendants acted with 'deliberate indifference'

to his claimed medical needs." (Doc. 22 at 15.)

The medical records submitted by Defendants unequivocally establish that the

medical staff members at NWSCF provided adequate medical care for Murphy's foot

rash and GERD. First, the staff members were clearly responsive to Murphy's healthcare

requests throughout 2014 and 2015, usually responding within one or two days. Also,

staff members prescribed medication for Murphy's foot rash and instructed Murphy on

how to keep his feet clean and dry. Staff members also recommended medication for

Murphy's GERD and educated him about how to reduce acid-reflux symptoms. As noted

above, these treatments have been recognized as "standard" treatments (Doc. 22-2 at 2,

¶¶ 6, 7; 3, ¶ 17), and thus Murphy's preference for different treatments or a different diet does not give rise to a deliberate indifference claim.  *See Chance*, 143 F.3d at 703.

The NWSCF medical staff members were similarly attentive to Murphy's mental health needs, again providing satisfactory care.  A treatment plan was established, and Murphy's mental health was monitored regularly.  (Doc. 22-85.)  Not only did Murphy receive mental health care within the DOC but also for a few months at the Vermont Psychiatric Care Hospital.

Murphy's conclusory allegations in response to Defendants' Motion do not affect the analysis.  "If the moving party has carried its burden, we must determine whether the nonmoving party has 'come forward with evidence that would be sufficient to support a jury verdict in its favor.'"  *Evans v. Consumer Info. & Dispute Resolution*, 223 F. App'x 46, 47 (2d Cir. 2007) (quoting *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir. 2002)).  "Unsupported assertions and conclusions of the nonmoving party are not enough to overcome a well-pleaded summary judgment motion."  *Abramowitz v. Ogrinc*, No. 3:01CV492 (AHN), 2002 WL 32124965, at *2 (D. Conn. Sept. 9, 2002) (citing *Tunnell v. United Techs. Corp.*, 54 F. Supp. 2d 136, 139 (D. Conn. 1999)); *Dasher v. N.Y.C. Police Dep't*, No. 94 CV 3847(SJ), 1999 WL 184118, at *1 (E.D.N.Y. Mar. 18, 1999) ("Mere conclusory allegations will not suffice. . . .  [T]he court should grant summary judgment where the nonmoving party's evidence is merely colorable, conclusory, speculative, or not significantly probative.").

Here, Murphy's affidavit (Doc. 25 at 2) is conclusory, self-serving, and "not significantly probative."  *Dasher*, 1999 WL 184118, at *1.  For instance, Murphy repeats

allegations from his Complaint—such as "Nobody would help me" (Doc. 25 at 3; *see also* Doc. 5 at 5 ("No one will help."))—but provides no specific evidence or facts to support them.  *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").  Murphy also adds conclusory and vague assertions such as "total lack of respect [and] deliberate indifference" and "my food and medical care is inadequate" (Doc. 25 at 3–4), without giving any specific facts to support them.[4]  Consequently, Murphy has not established any genuine issue as to a material fact, and I find that Defendants are entitled to summary judgment as a matter of law.[5]

Accordingly, I recommend that the Court GRANT summary judgment for Defendants with respect to Murphy's Fourteenth and Eighth Amendment claim.

---

[4]  The grievance forms and healthcare requests that Murphy attached to his Complaint do not affect the constitutional analysis.  (Doc. 5-1.)  Many of the forms are illegible (*see id.* at 3), and some medical forms appear not to have been received by medical staff because the "Received/Triage Date" line is blank (*see, e.g.*, *id.* at 4).  Moreover, two of Murphy's attachments include notations about Murphy's "special diet" which consisted of "soft food" (*id.* at 1, 6), further countering Murphy's allegation that his food was "inadequate" (Doc. 25 at 4).  Therefore, even if these documents were to be considered, they do not create disputed facts.

[5]  To the extent that Murphy presents new allegations in his Response to Defendants' Motion (Doc. 25), I decline to address them at this stage in the litigation, and Defendants need not provide further briefing.  *See Fulmore v. Raimo*, No. 9:10–CV–1096 (GTS/DRH), 2012 WL 4033731, at *5 (N.D.N.Y. Sept. 12, 2012) ("Simply stated, permitting Plaintiff to effectively amend his Complaint through his opposition to Defendants' motion for partial summary judgment would be, under the circumstances, unduly prejudicial to Defendants, a gross waste of judicial resources, and a violation of both Fed. R. Civ. P. 15(a) and the Court's Pretrial Scheduling Order."); *see also Jackson v. Onondaga County*, 549 F. Supp. 2d 204, 219–20 (N.D.N.Y. 2008) ("[I]t would be inappropriate to consider [Plaintiff's] four new factual allegations for two reasons: (1) the four new allegations are almost entirely inconsistent with the allegations of his Complaint (which is conspicuously silent as to the new facts); and (2) the four new allegations are not made in response to a motion to dismiss . . . ." (footnote omitted)).

## II.     Eleventh Amendment Immunity

### A.     Money Damages

Defendants argue that "Murphy's claims for money damages against Defendants are barred by the Eleventh Amendment."  (Doc. 22 at 10.)  The Eleventh Amendment provides immunity to states and state agencies "from suits brought by private parties in federal court."  *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996)).  The immunity extends to government entities such as "'state agents and state instrumentalities' that are, effectively, arms of a state."  *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

The doctrine of sovereign immunity under the Eleventh Amendment also "protects state officials sued for damages in their official capacity."  *Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986) (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).  "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted).  The Eleventh Amendment does not bar claims against state officials in their individual capacities.  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993).  Additionally, there are two exceptions to Eleventh Amendment immunity: a state can waive its immunity to suit, or Congress can abrogate a state's immunity by statute.  *Mich. Dep't of State Police*, 491 U.S. at 66.

14

Here, the DOC and NWSCF are immune from suit because each entity is an arm of the State of Vermont, *see Woods*, 466 F.3d at 236 (citing *Regents of the Univ. of Cal.*, 519 U.S. at 429)); *Gonzalez v. N.Y. State Dep't of Corr. Servs. Fishkill Corr. Facility*, 122 F. Supp. 2d 335, 340 (N.D.N.Y. 2000) (concluding Fishkill Correctional Facility is an "arm[] of the state"), and neither exception to sovereign immunity applies.  First, the State of Vermont has not waived its immunity.  *See Thompson*, 949 F. Supp. 2d 558, 572 (D. Vt. 2013) ("Vermont has not waived its sovereign immunity under § 1983." (citing Vt. Stat. Ann. tit 12, § 5601(g))).  And second, Congress has not abrogated Vermont's immunity by statute.  *See Muhammad v. Gold*, No. 1:05–CV–146, 2007 WL 3088133, at *2 (D. Vt. Oct. 23, 2007) ("There is no indication in 42 U.S.C. § 1983 that Congress intended to abrogate state sovereign immunity, and the Supreme Court has specifically held that Congress did not intend to override well-established immunities such as state sovereign immunity when it enacted § 1983.").

Likewise, to the extent that Superintendent Hale is sued in his official capacity, he is also immune from suit.  Eleventh Amendment immunity barring suit against a state "remains in effect when [s]tate officials are sued for damages in their official capacity." *Kentucky*, 473 U.S. at 169 (citing *Cory v. White*, 457 U.S. 85, 90 (1982)).  Accordingly, Defendants DOC and NWSCF, and Defendant Hale in his official capacity, are all immune under the Eleventh Amendment from Murphy's claims for monetary damages; and I recommend that the Court GRANT summary judgment in favor of Defendants with respect to these claims.

### B.      Prospective Injunctive Relief

Murphy also seeks relief in the form of an "order" from the Court, requiring the DOC to provide him with "proper medical care."  (Doc. 5 at 3.)  Defendants do not address Murphy's claim for prospective injunctive relief in their pending Motion.

Under *Ex parte Young*, 209 U.S. 123 (1908), there exists:

> a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment.

*Ford v. Reynolds*, 316 F.3d 351, 354–55 (2d Cir. 2003) (alteration in original) (quoting *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)).  However, "the Eleventh Amendment 'bars suits that seek either money damages, or injunctive relief' against state agencies."  *Deadwiley v. N.Y. State Office of Children & Family Servs.*, 97 F. Supp. 3d 110, 116 (E.D.N.Y. 2015) (quoting *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001)).

Here, Murphy seeks prospective injunctive relief against the DOC, a state agency, and not against a Vermont state official.  The Eleventh Amendment bars such a claim.  Accordingly, I recommend dismissing *sua sponte* Murphy's claim for injunctive relief.  *See McCullough v. Burroughs*, No. 04-CV-3216 FB LB, 2005 WL 3164248, at *1 n.3 (E.D.N.Y. Nov. 29, 2005) ("The Court may *sua sponte* dismiss a claim on the ground of Eleventh Amendment immunity because it affects subject matter jurisdiction."  (citing *Atl. Healthcare Benefits Tr. v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993))).

### III.    Personal Involvement

Defendants next argue that Murphy's claims against Superintendent Hale in his individual capacity do not withstand summary judgment because Murphy's Complaint "is devoid of any facts showing that Superintendent Hale had any personal involvement in the care or treatment of Mr. Murphy."  (Doc. 22 at 11.)  Furthermore, Defendants contend that Murphy presents "no allegations that Superintendent Hale personally knew or had acquired any knowledge that Mr. Murphy was complaining about treatment of his athlete's foot, GERD, or any other facts or circumstances regarding . . . Mr. Murphy's physical or mental health condition prior to this lawsuit."  (*Id.*)  Moreover, Defendants claim the Court cannot infer that "Hale had knowledge or belief that medical staff was inadequately treating Mr. Murphy or that he was informed of the alleged mistreatment or non-treatment."  (*Id.*)

In the Second Circuit, it is well settled "'that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)).  The Second Circuit explained:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the

defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[6]  Additionally, personal involvement "requires a showing of more than the linkage in the prison chain of command; the doctrine of respondeat superior does not apply."  *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985) (per curiam) (citing *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir. 1974)); *see also Colon*, 58 F.3d at 874 ("The bare fact that [Commissioner] Coughlin occupies a high position in the New York prison hierarchy is insufficient to sustain Colon's claim.").

Here, Murphy names Superintendent Hale as a defendant in the caption of his Complaint, but fails to allege Hale's personal involvement in Murphy's medical care or diet regimen under the five *Colon* factors set forth above.  In fact, Murphy's Complaint and Response make no reference at all to Superintendent Hale.[7]

---

[6] In *Grullon v. City of New Haven*, the Second Circuit recognized that "the Supreme Court's decision in *Ashcroft v. Iqbal* . . . may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations."  *Grullon*, 720 F.3d 133, 139 (2d Cir. 2013); *see also Raspardo v. Carlone*, 770 F. 3d 97, 117 (2d Cir. 2014) (declining to decide "contours of the supervisory liability test . . . after *Iqbal*").  Still, the Second Circuit has not specifically overruled *Colon*, and this Court continues to treat it as good law.  *See, e.g.*, *Jones v. Pallito*, No. 2:14–cv– 199, 2015 WL 2376347, at *5 n.9 (D. Vt. May 18, 2015).

[7] Even if his Complaint did contain allegations regarding Hale, Murphy could not rest solely on them for purposes of opposing Defendants' Motion.  "[E]ven a *pro se* plaintiff must offer some evidence that would defeat a motion for summary judgment."  *Melgarejo v. N.Y. Coll. of Podiatric Med.*, No. 12 Civ. 6669(KBF), 2014 WL 1683809, at *4 (S.D.N.Y. Apr. 28, 2014), *aff'd*, 601 F. App'x 61 (2d Cir. 2015) (citing *Saldana*, 2005 WL 66895, at *2).  Additionally, Murphy's Complaint is not a verified complaint—a complaint sworn under penalty of perjury—and thus is not considered at the summary judgment stage.  *See Colon*, 58 F.3d at 872 ("A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist, provided that it meets the other requirements for an affidavit.").

Furthermore, Murphy's allegation that he "filed multiple grievances" is insufficient to withstand summary judgment on the basis of personal involvement. (Doc. 5 at 2; *see also* Doc. 5-1 at 1, 2, 3, 6 (grievance forms).)  Even if the Court considered the allegations in Murphy's Complaint for purposes of ruling on the pending Motion, the Complaint's allegations and attachments do not demonstrate that Hale was personally involved in the alleged constitutional violations.  "The general rule is that if an official receives a letter from an inmate and passes it on to a subordinate for response or investigation, the official will not be deemed personally involved with respect to the subject matter of the letter."  *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).  On the other hand, a supervisory official may be found to have had personal involvement if "the official does personally look into the matters raised in the letter, or otherwise acts on the prisoner's complaint or request."  *Id.*  Here, Murphy does not present any evidence showing that Hale received a grievance from Murphy or acted on Murphy's requests in any way.  I therefore recommend that the Court GRANT summary judgment with respect to Murphy's claims against Hale in his personal capacity.

## IV.    State Law Claim

Defendants argue that "[t]o the extent Mr. Murphy is alleging a tort claim for medical negligence, it fails for lack of compliance with Vermont's medical malpractice statute, 12 V.S.A. § 1908."  (Doc. 22 at 17.)  I recommend that the Court refrain from exercising supplemental jurisdiction over any state law claim.  *See* 28 U.S.C. § 1367(c)(3).  Therefore, the Court need not address this argument.

Pursuant to 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  *Id.*  However, a court has the discretion to "decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction."  *Id.* § 1367(c)(3); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 245 (2d. Cir. 2011) ("In providing that a district court 'may' decline to exercise such jurisdiction, [section 1367(c)] is permissive rather than mandatory."  (alteration in original) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir 2003))).  The U.S. Supreme Court noted: "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, Defendants have presented no compelling reason for the Court to retain supplemental jurisdiction over Murphy's potential state law claims.  Additionally, given the absence of a federal law claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction here. Therefore, I recommend that the Court decline to exercise supplemental jurisdiction over any state law claims potentially alleged in Murphy's Complaint.

**V.    John and Jane Doe**

As noted, Murphy's Complaint names John and Jane Doe as Defendants.  (Doc. 5 at 5.)  In a footnote, Defendants assert that although the Does appear in the caption of the Complaint, Murphy "never identified those persons nor are they referenced anywhere in his Complaint."  (Doc. 22 at 1 n.1.)

"Generally, when a *pro se* plaintiff includes a 'Doe' defendant along with named defendants, the complaint is served upon the named defendants, and the plaintiff pursues discovery to identify the Doe defendant."  *Reed v. Doe No. 1*, No. 9:11–CV–0250, 2013 WL 5441503, at *8 (N.D.N.Y. Sept. 27, 2013) (citing *Peralta v. Doe*, No. 04-CV-6559P, 2005 WL 357358, at *2 (W.D.N.Y. Jan. 24, 2005)); *see also Murphy v. Goord*, 445 F. Supp. 2d 261, 266 (W.D.N.Y. 2006) ("[C]ourts have recognized that situations arise in which the identity of alleged defendants may not be known prior to the filing of a complaint.  In such situations, the plaintiff should have an opportunity to pursue discovery to identify the unknown defendants." (quoting *Covington v. Warden of C–95*, No. 93 CV 1958 (FB), 1996 WL 75211, at *4 (E.D.N.Y. Feb. 8, 1996))).  District courts have been instructed to "provide incarcerated *pro se* litigants with reasonable assistance in investigating the identity of such 'John Doe' defendants."  *McKoy v. Suffolk Cty. Corr.*, No. 14–CV–0249 (JS)(AKT), 2014 WL 824516, at *3 (E.D.N.Y. Mar. 3, 2014) (citing *Valentin v. Dinkins*, 121 F.3d 72, 75–76 (2d Cir. 1997) (per curiam)).

Nevertheless, courts may dismiss claims against Doe defendants *sua sponte* where the plaintiff does not meet the pleading standard.  *See Melendez v. Nassau County*, No. 10–CV–2516 (SJF)(WDW), 2010 WL 3748743, at *5 (E.D.N.Y. Sept. 17, 2010);

*Hanks v. Doe*, No. 5:09-CV-1109 (NPM/GHL), 2010 WL 2516801, at *4 n.4 (N.D.N.Y. May 18, 2010), *adopted*, No. 5:09-CV-1109 (N.D.N.Y. June 14, 2010).  In *Melendez*, for example, the court dismissed claims against two Jane Doe defendants because, although they were listed in the complaint's caption, the complaint provided "no factual basis for their involvement" in the relevant facts.  2010 WL 3748743, at *5; *but see Fanelli v. New York*, 51 F. Supp. 3d 219, 234–35 (E.D.N.Y. 2014) (distinguishing *Melendez* because *Fanelli* complaint "detail[ed] the involvement of the 'John Doe' and 'Jane Doe' Defendants").

Here, Murphy named John and Jane Doe as Defendants in the caption to his Complaint, but like the plaintiff in *Melendez*, he did not provide any factual allegations concerning the Does in the body of the Complaint.  Accordingly, I recommend that the Court DISMISS *sua sponte* Murphy's claims against John and Jane Doe.

## Conclusion

For the reasons stated above, I recommend that the Court GRANT Defendants' Renewed Motion for Summary Judgment (Doc. 22).  I also recommend that the Court decline to exercise supplemental jurisdiction over any state law claims, dismiss Murphy's request for injunctive relief, and dismiss Murphy's claims against John and Jane Doe.

Dated at Burlington, in the District of Vermont, this 25th day of February, 2016.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).